Shane A. Ross, Esq., #034435
**ROSS LAW, PLC**
10810 N. Tatum Blvd. Ste. 102-827
Phoenix, Arizona 85028
(480) 269-1237
E-mail: shane@rosslawaz.com
*Attorneys for Plaintiff*

Michael Shaolian, Esq.
Pro Hac Vice Admission
**THE SHAOLIAN LAW FIRM P.C.**
800 W. 1st Street, Suite 401
Los Angeles, California 90012
Telephone: (949) 735-5083
E-Mail: info@shaolianlawfirm.com
*Attorneys for Plaintiff*

# IN THE UNITED STATES FEDERAL COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Jennifer English, an individual, | Case No. 4:23-cv-00334-RM |
| Plaintiff, | |
| vs. | **FIRST AMENDED COMPLAINT** |
| Botx Solutions, Inc., a Delaware corporation; Botx Solutions, Inc. d/b/a Promus, a Delaware corporation; Jason Zuker, an individual; Alfonso Gonzalez, an individual; John Does 1-25; and Jane Does 1-25. | (Jury Trial Requested) |
| Defendants. | |

Plaintiff Jennifer English, (hereafter "Plaintiff" or "Ms. English"), by and through undersigned counsel, for her Complaint against Defendants BOTX SOLUTIONS, INC., Jason Zuker, Alfonso Gonzalez, and Does 1-25 ("Defendant," collectively "Defendants") alleges as follows:

**JURISDICTION, PARTIES, AND VENUE**

1

1. Plaintiff Jennifer English is a resident of the City of Tucson, Pima County, Arizona.

2. Defendant Jason Zuker is, upon information and belief, a resident of the State of Colorado.

3. Defendant Alfonso Gonzalez is, upon information and belief, a resident of the State of Washington.

4. Defendant BOTX SOLUTIONS, INC. is a Delaware corporation that does business, among other places, in Pima County, Arizona.

5. The unlawful employment practices described herein were committed within the State of Arizona, Pima County, where Defendants employed Plaintiff.

6. Defendants' conduct business in Arizona and all or a substantial part of the acts or omissions giving rise to the claims occurred in and were manifested in Pima County, Arizona.

7. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 & 1343. Pendent jurisdiction over the related state law claims is invoked pursuant to 28 U.S.C. §§ 1367.

8. Accordingly, venue in this Court is proper pursuant to 28 U.S.C. § 1391(b).

**PROCEDURE**

9. Ms. English has satisfied all procedural requirements for commencing this action.

10. On November 21, 2022, Ms. English filed a charge of discrimination with the Arizona Division of Occupational Safety and Health ("ADOSH") and with the Equal Employment Opportunity Commission ("EEOC") on December 29, 2022, contending that she has been discriminated against in violation of the Arizona Civil Rights Act, Arizona Employment Protection Act, and Title VII of the Civil Rights Act of 1964.

11. On February 1, 2023, the EEOC issued a Notice of Right to Sue regarding Ms. English's charge.

12. Ms. English has filed this lawsuit within 90 days of the date she received the Notice of Right to Sue letter.

**FACTUAL ALLEGATIONS**

13. Defendant BOTX SOLUTIONS, INC. ("BOTX") is a Delaware corporation that does business, among other places, in the State of Arizona.

14. BOTX is an "employer" within the definition of Title VII of the Civil Rights Act of 1964, The Americans with Disabilities Act of 1990, and The Arizona Civil Rights Act.

15. Defendant Zuker is an "employer" within the definition of Title VII of the Civil Rights Act of 1964, The Americans with Disabilities Act of 1990, and The Arizona Civil Rights Act.

16. Defendant Gonzalez is an "employer" within the definition of Title VII of the Civil Rights Act of 1964, The Americans with Disabilities Act of 1990, and The Arizona Civil Rights Act.

17. Defendant Zuker, Gonzalez, and BOTX hired Ms. English on or about June 30, 2021 to serve as full-time Chief Culinary Officer for BOTX.

18. BOTX outlined actual and implied promises to Ms. English to provide compensation commensurate with her experience in exchange for her duties to BOTX. BOTX, Jason Zuker, and Alfonso Gonzalez repeatedly modified their promises relating to compensation.

19. Ms. English prided herself on her excellent service to the company and dedication to her job. Ms. English was expected to and did participate in and lead daily meetings with the company, often meeting multiple times per day, spending time preparing for each meeting, participating and leading the meetings, and taking requisite action post-meeting. Ms. English additionally spent hours each day preparing for and hosting meetings on social media platforms Clubhouse and Twitter Spaces, solely dedicated to her role with BOTX.

20. As Defendants were aware, Ms. English suffers from multiple sclerosis, manifesting in short-term and acute cognitive decline.

21. Despite Ms. English's protests, Defendants directed Ms. English to execute on several activities outside of her initial job description that were particularly aggravating to her condition.

22. Ms. English requested reasonable accommodations in using company mandated software.

23. Despite Ms. English's complaints, Defendants failed to provide reasonable accommodations to Ms. English thus exacerbating her condition.

24. Ms. English received deprecating comments by Defendants Jason Zuker, Chief Executive Officer ("Zuker") and Alfonso Gonzalez, Chief Operating Officer ("Gonzalez") related to her medical condition and the related symptoms.

25. Ms. English now suffers from exacerbation of her multiple sclerosis diagnosis in the form of cognitive fatigue, weakness, migraines, balance issues, and other symptoms.

26. Throughout Ms. English's tenure at BOTX, Zuker, and Gonzalez perpetuated a culture of sexist discrimination among its female employees.

27. As Chief Executive Officer and Chief Operating officers respectively; Zuker and Gonzalez were the two principal owners of BOTX sitting as Board of Directors of BOTX. Gonzalez and Zuker together personally, and in close tandem, oversaw, managed, and executed core functions as they had the only significant roles in the corporation.

28. Zuker and Gonzalez held significant roles in the ownership, management, and control of BOTX and its related entities. All decisions of BOTX went through them. They set the tone for the environment due to their close relationship as dual owners and their tandem behavior; employees were unable voice complaints against them to anyone with more authority.

29. Zuker and Gonzalez exercised total dominion over BOTX such that the corporation had no separate will of its own. Zuker and Gonzalez not only owned BOTX, they were BOTX. Zuker and Gonzalez leveraged that dominion over BOTX to commit wrongdoings against Plaintiff.

30. Zuker and Gonzalez were the only two individuals that ever enjoyed an ownership interest in the corporation despite the promises they made to other employees.

31. Zuker and Gonzalez in their capacities as co-owners of BOTX failed to maintain corporate formalities related to separation of personal and business bank accounts as they pertain to BOTX.

32. Zuker and Gonzalez received compensation based on BOTX's profits.

33. Zuker and Gonzalez purposefully under-collateralized BOTX in order to dominate the corporation as their primary patrons.

34. Zuker and Gonzalez relished in utilizing their office as CEO and COO respectively to perpetuate a top-down culture of toxic harassment and discrimination against Plaintiff and her co-workers.

35. Zuker and Gonzalez repeatedly made deprecating comments regarding Ms. English's physical disabilities and her gender. In one incident, both Zuker and Gonzalez recklessly made reference to Ms. English's disability in criticizing her for delay in a deliverable objective. Following this exchange, Ms. English's colleague privately lamented to her regarding the outrageous nature of the comments made and the extreme behavior displayed by Zuker and Gonzalez.

36. When Plaintiff or her co-workers complained about the discriminatory behavior and harassment, Zuker and Gonzalez would utilize the full dominance and control they exercised over the corporation to silence whistleblowers, including Plaintiff.

37. Zuker and Gonzalez's disproportionate and unilateral control of the corporation was used as an instrument of intimidation, suppression, and wrongful activity.

38. Employees knew that if either Zuker or Gonzalez wronged them, there was nowhere to go within the corporation as Zuker and Gonzlez were co-owners, co-managers, co-conspirators, and co-serial harassers at BOTX.

39. Specifically, Zuker and Gonzalez continuously made offensive remarks and disparately treated female employees, including Ms. English, throughout her tenure at BOTX.

40. On or about January 1, 2022, Zuker and Gonzalez began to hold private meetings without Ms. English.

41. Continuously, Zuker and Gonzalez were hostile, disrespectful, and discriminatory to Ms. English, both privately and publicly, due to her sex and disability.

42. After one specific private meeting, Ms. English learned that Zuker and Gonzalez conspired against Ms. English due to her sex and disability. The frequency of hostility continued in tandem with the private meetings through March 2022.

43. On or about January 25, 2022, Plaintiff approached Gonzalez highlighting that BOTX's wrongful failures to pay her for the services she rendered had adversely affected her in such a manner that she could not support herself financially. Plaintiff referred to previous promises to compensate her and demanded prompt payment for her services rendered. Alfonso Gonzalez, COO of BOTX communicated to Plaintiff that he would pay Plaintiff for her services rendered so that she could continue working at BOTX. Gonzalez knew he would not be providing payment commensurate to her past and future services rendered. Instead, Gonzalez personally paid Plaintiff the amount of $999 from his personal bank account, on

behalf of BOTX, in order to induce and placate Plaintiff to continue pledging her unrelenting services to Zuker, Gonzalez, and BOTX.

44. On or about February 28, 2022, Plaintiff approached Zuker highlighting that BOTX's wrongful failures to pay her for the services she rendered had adversely affected her in such a manner that she could not support herself financially. Plaintiff referred to previous promises to compensate her and demanded prompt payment for her services rendered. Jason Zuker, CEO of BOTX communicated to Plaintiff that he would pay Plaintiff for her services rendered so that she could continue working at BOTX. Zuker knew he would not be providing payment commensurate to her past and future services rendered. Instead, Zuker personally paid Plaintiff the amount of $125.66 from his personal bank account, on behalf of BOTX, in order to induce and placate Plaintiff to continue pledging her unrelenting services to Zuker, Gonzalez, and BOTX.

45. On or about March 2022, a female co-worker was discharged due to complaints she lodged regarding the continued discrimination and hostile work environment at BOTX.

46. On or about March 6, 2022, Ms. English promptly submitted a written correspondence to BOTX management, including Zuker and Gonzalez, asserting her rights by reasonably raising issue with BOTX's failure to compensate her and her female co-worker.

47. On or about March 6, 2022, Ms. English also raised issues related to discrimination against herself and her female co-worker.

48. BOTX never investigated any claims lodged by employees, including Ms. English, related to failure to pay nor discrimination by Zuker and/or Gonzalez.

49. BOTX never provided employees with an avenue or policy with respect to lodging any allegations or complaints about Zuker and/or Gonzalez.

50. Immediately following her whistleblowing, BOTX terminated Ms. English.

51. BOTX, its Directors and Does 1-25 did not implement a policy for whistleblowing investigations relating to Defendants Zuker and Gonzalez.

52. Directors and Does 1-25 were aware of complaints relating to Zuker and Gonzalez and ratified their tortious behavior.

53. On or about March 16, 2022, despite Ms. English's dedication to her role and unwavering service to BOTX, Ms. English was constructively discharged from BOTX due to her sex, her disabilities, and her whistleblowing.

54. BOTX implicitly and explicitly breached their agreements to Ms. English to provide compensation commensurate with her services rendered through written statements, oral statements, conduct, electronic Venmo transactions, and other activities. Ms. English was not even paid minimum wage or overtime wages.

## COUNT ONE

**Discrimination Based on Disability, Including Retaliation and Hostile Work Environment**

55. Ms. English incorporates all prior paragraphs as fully stated herein.

56. Defendants addressed the incidents unfairly due to their discrimination against Ms. English on the basis of her disability.

57. Defendants' acts set above evidence intentional adverse treatment and a hostile work environment in violation of A.R.S. § 23-1501, Section 102 of Title I, and Title V of the Americans with Disabilities Act, 42 U.S.C. § 12112.

58. Ms. English has suffered from Defendants' discrimination on the basis of her multiple sclerosis disability.

59. Ms. English was treated differently and experienced unfair and disparate treatment in comparison to other able-bodied employees of BOTX.

60. Defendants isolated, harassed, mistreated, and eventually terminated Ms. English.

61. Defendants' decision to terminate Ms. English's employment was due to their discrimination based on Ms. English's disability.

62. As a direct and proximate result of Defendants' discrimination, Plaintiff has suffered from physical illness, mental and emotional distress, medical expenses, loss of pay, loss of job benefits, and legal fees.

## COUNT TWO

**Discrimination Based on Sex; Including Retaliation and Hostile Work Environment**

63. Ms. English incorporates all prior paragraphs as fully stated herein.

64. Defendants addressed the incidents unfairly due to their discrimination against Ms. English on the basis of her sex.

65. Defendants' acts set above evidence intentional adverse treatment and a hostile work environment in violation of A.R.S. § 23-1501, and Title VII of the Civil Rights Act of 1964, as amended.

66. Ms. English has suffered from Defendants' discrimination on the basis of her gender as a female in violation of 42 U.S.C. § 2000e-2(a).

67. Ms. English was treated differently and experienced unfair and disparate treatment in comparison to other male employees at BOTX.

68. Defendants isolated, harassed, mistreated, and eventually terminated Ms. English.

69. Defendants' decision to terminate Ms. English's employment was due to their discrimination based on Ms. English's sex.

70. As a direct and proximate result of Defendants' discrimination, Plaintiff has suffered from mental and emotional distress, loss of pay, loss of job benefits, and legal fees.

## COUNT THREE

### Wrongful Discharge – Retaliation

71. Ms. English incorporates all prior paragraphs as fully stated herein.

72. In Ms. English reporting her opposition of Defendants' conduct that she reasonably believed was in violation of the Arizona Constitution, Ms. English engaged in protect activity.

73. Ms. English reasonably disclosed to Defendants her opposition of Defendants' wrongful conduct and Defendants' workplace discrimination, and wrongful compensation practices against her and her co-worker.

74. After Ms. English reported her opposition to Defendants, Defendants retaliated against her by terminating her employment, within days of reporting, in violation of the Arizona Employment Protection Act, A.R.S. § 23-1501 et seq.

75. There is a causal connection established by time relevance between Ms. English's protected activity and the adverse actions taken by Defendants.

76. As a direct and proximate result of Defendants' violation of public policy in their retaliation and termination of Ms. English's employment, Ms. English has sustained damages by way of mental anguish and emotional distress, humiliation and embarrassment, the value of lost benefits, denial of professional standing and loss of reputation, loss of earnings and earning capacity, the loss of the ordinary pleasures of, including but not limited to, the right to pursue gainful occupation of choice.

## COUNT FOUR

### Constructive Discharge Due to Hostile Working Environment

77. Ms. English incorporates all prior paragraphs as fully stated herein.

78. As Ms. English's tenure at BOTX progressed, her working environment became so hostile that it qualified as intolerable within the meaning of A.R.S. § 23-1502.

79. Defendant Zuker and Gonzalez created intolerable working conditions for Ms. English by verbal assault, harassment, and retaliation.

80. Defendant Gonzalez repeatedly berated Ms. English by calling her slow due to her disability.

81. Defendants failed to conform to the notice requirements of A.R.S. § 23-1502(E) subsequently waiving their right to notice.

82. As a direct and proximate result of Defendants' verbal assault, discrimination, harassment, and retaliation, the work environment became so hostile that a reasonable employee would find it intolerable and would have to terminate her employment.

83. Due to the hostile work environment created by Defendants, Ms. English was constructively discharged from her employment.

84. As a direct and proximate result of constructive discharge due to hostile work environment, Ms. English has suffered from emotional distress, physical illness, medical expenses, denial of professional standing and loss of reputation, loss of earnings and earning capacity, the loss of the ordinary pleasures of, including but not limited to, the right to pursue gainful occupation of choice, and legal fees.

## COUNT FIVE

### Negligent Retention and Supervision

85. Ms. English incorporates all prior paragraphs as fully stated herein.

86. Defendant BOTX and its Board of Directors and Does 1-25 ratified tortious acts and conduct by Defendants Zuker and Gonzalez.

87. Defendant BOTX and its Board of Directors and Does 1-25 knew of various instances, communications, videos, and other information highlighting Zuker and Gonzalez's conduct and their tortious acts.

88. Defendant BOTX and its Board of Directors and Does 1-25 gave improper or ambiguous orders and failed to make proper regulations and policies relating to tortious conduct including discrimination and termination.

89. Defendant BOTX and its Board of Directors and Does 1-25 failed to prevent and where negligent in allowing their employees Zuker and Gonzalez in continuing tortious activities including violating commitments regarding compensation, withholding pay, employee discrimination, wrongful termination, and violations of whistleblower protections amongst others.

90. Defendant BOTX and its Board of Directors and Does 1-25 continued retaining and ratifying Zuker and Gonzalez notwithstanding this knowledge.

91. Defendant Gonzalez, who was on the Board of Directors at BOTX, negligently hired Defendant Zuker as CEO.

92. Defendant Zuker, who was on the Board of Directors at BOTX, negligently hired Defendant Gonzalez as COO.

93. Defendant BOTX and its Board of Directors and Does 1-25 continued retaining Zuker as CEO and Gonzalez as COO despite foreseeable continued contact with employees and others while in the performance of their duties as Chief Executive Officer and Chief Operating Officer and the potential harm they could inflict on employees and others.

94. Defendant BOTX and its Board of Directors and Does 1-25 negligently hired Zuker and Gonzalez despite their total lack of experience.

95. Defendant BOTX and its Board of Directors and Does 1-25 had reason to believe that undue risk would continue to exist and took no action to remove Zuker and Gonzalez despite this risk.

96. Defendant BOTX and its Board of Directors and Does 1-25 continued trust of Zuker as CEO and Gonzalez as COO despite having reason to believe that a continued undue risk of harm would exist constitute clear violations of the Board of Director's duty of supervision and retention.

97. Defendant BOTX and its Board of Directors and Does 1-25 inaction ratified Zuker's and Gonzalez's tortious acts, misconduct, and egregious behavior.

98. Defendants BOTX and its Board of Directors and Does 1-25 negligence in hiring, retaining, and failing to supervise Zuker and Gonzalez was a substantial factor in causing Plaintiff's legally cognizable harm.

99. Defendant Gonzalez's inaction ratified Zuker's tortious acts, misconduct, and egregious behavior.

100. Defendant Zuker's inaction ratified Gonzalez's tortious acts, misconduct, and egregious behavior.

101. Defendant Gonzalez's negligence in hiring, retaining, and failing to supervise Zuker was a substantial factor in causing Plaintiff's legally cognizable harm.

102. Defendant Zuker's negligence in hiring, retaining, and failing to supervise Gonzalez was a substantial factor in causing Plaintiff's legally cognizable harm.

103. As a direct and proximate result of the acts and omissions of BOTX, Board of Directors, and Does 1-25, jointly and severally, Ms. English suffered physical, emotional, and mental distress, including but not limited to shock, pain, discomfort and/or anxiety.

104. As a direct and proximate result of the acts and omissions of BOTX, Board of Directors, and Does 1-25, jointly and severally, Ms. English has been forced to incur expenses for medical care, and/or is informed and believes, and thereon alleges, that Ms. English will in the future be forced to incur additional expenses of the same nature, all in an amount which is at present unknown.

## COUNT SIX

### Intentional Infliction of Emotional Distress

105. Ms. English incorporates all prior paragraphs as fully stated herein.

106. Defendants' callous conduct to verbally assault, harass and retaliate against Ms. English was extreme and outrageous.

107. Ms. English repeatedly brought this to Defendants' attention, but she was dismissed.

108. Defendants knew or reasonably should have known the that their reckless conduct would cause Ms. English emotional distress and serious anxiety.

109. Defendants knew or should have known that Ms. English was on the edge of being emotionally damaged and/or mentally traumatized since Ms. English was suffering from repeated verbal assault, hostility, harassment, isolation due to her disability and sex, and retaliation from Zuker and Gonzalez throughout her tenure at BOTX.

110. Due to the severe emotional distress Ms. English suffered from Defendants' actions, Ms. English has suffered severe anxiety and had symptoms of fatigue, fever, shortness of breath, chest pain, nausea, diarrhea, vomiting, and bleeding associated with the emotional distress caused by Defendants.

111. Due to the severe emotional distress Ms. English suffered from Defendants' actions, Ms. English has suffered exacerbation of her muscular sclerosis symptoms.

## COUNT SEVEN

## Fraud

112. Ms. English incorporates all prior paragraphs as fully stated herein.

113. On or about January 25, 2022, Plaintiff approached Gonzalez highlighting that BOTX's failures to pay her for the services she rendered had adversely affected her in such a manner that she could not support herself financially.

114. Plaintiff referred to previous promises to compensate her and demanded prompt payment for her services rendered.

115. Alfonso Gonzalez, COO of BOTX orally communicated to Plaintiff that he would pay Plaintiff for her services rendered so that she could continue working at BOTX. Gonzalez knew he would not be providing payment commensurate to her past and future services rendered. Instead, Gonzalez personally and maliciously paid Plaintiff the amount of $999 from his personal bank account, on behalf of BOTX, in order to induce and placate Plaintiff to continue pledging her unrelenting services to Zuker, Gonzalez, and BOTX.

116. Based on this representation and the subsequent actions by Gonzalez, Ms. English continued working for Zuker, Gonzalez, and BOTX in an uncompensated manner.

117. As a direct and proximate result of the acts and omissions of Gonzalez, Ms. English suffered monetary damages, physical, emotional, and mental distress.

118. On or about February 28, 2022, Plaintiff approached Zuker highlighting that BOTX's failures to pay her for the services she rendered had adversely affected her in such a manner that she could not support herself financially.

119. Plaintiff referred to previous promises to compensate her and demanded prompt payment for her services rendered.

120. Jason Zuker, CEO of BOTX orally communicated to Plaintiff that he would pay Plaintiff for her services rendered so that she could continue working at BOTX. Zuker knew he would not be providing payment commensurate to her past and future services rendered. Instead, Zuker personally and maliciously paid Plaintiff the amount of $125.66 from his personal bank account, on behalf of BOTX, in order to induce and placate Plaintiff to continue pledging her unrelenting services to Zuker, Gonzalez, and BOTX.

121. Based on this representation and the subsequent actions by Zuker, Ms. English continued working for Zuker, Gonzalez, and BOTX in an uncompensated manner.

122. As a direct and proximate result of the acts and omissions of Zuker, Ms. English suffered monetary damages, physical, emotional, and mental distress.

## COUNT EIGHT

### Violation of the FLSA, 29 U.S.C. 201, et. Seq. as Amended

123. Ms. English incorporates all prior paragraphs as fully stated herein.

124. Ms. English was covered by the provisions of the Fair Labor Standards Act, specifically 29 U.S.C. §206(a)(1) and 29 U.S.C. §207(a)(1), which require the Defendants to pay Plaintiff one and one half times her regular rate of pay for hours worked in excess of forty in a given week. Additionally, in Arizona, where an employee such a Plaintiff is subject to both state and federal minimum wage laws, employees are entitled to the higher minimum wage of the two; in this case, Arizona's minimum wage is higher than the federal minimum wage, and as such, Defendants were required to pay the Arizona minimum wage.

125. Defendants failed and refused to pay Plaintiff one and one half times their regular hourly rate for working overtime.

126. Defendants knew that they were required by law to pay overtime and minimum wages. Defendants wilfully violated the FLSA, entitling Plaintiff to recover liquidated damages as provided by 29 U.S.C. §216(b) in an amount equal to the unpaid overtime and unpaid minimum wages.

127. Plaintiff is entitled to recover her reasonable attorney fees and costs incurred in bringing this action as authorized by 29 U.S.C. §216(b).

## COUNT NINE

### Quantum Meruit

128. Ms. English incorporates all prior paragraphs as fully stated herein.

129. Due to the misrepresentations made by Zuker, Gonzalez, and BOTX, Ms. English worked for the parties as Chief Culinary Officer for a total of 259 days.

130. Zuker, Gonzalez, and BOTX outlined actual and implied promises to Ms. English to provide compensation commensurate with her experience in exchange for her duties to BOTX.

131. Ms. English prided herself on her excellent service to the company and dedication to her job. Ms. English was expected to and did participate in and lead daily meetings with the company, often meeting multiple times per day, spending time preparing for each meeting, participating and leading the meetings, and taking requisite action post-meeting. Ms. English additionally spent hours each day preparing for and hosting meetings on social media platforms Clubhouse and Twitter Spaces, solely dedicated to her role with BOTX.

132. Ms. English was not paid for the reasonable value of her services rendered and it was unfair for Zuker, Gonzalez, and BOTX to receive the benefit of those services without paying for them.

**DAMAGES**

133. As a direct and proximate result of Defendants' violations of Ms. English's protected rights in each of the above-mentioned claims for relief, Ms. English suffered and continues to suffer from emotional distress, physical illness, medical expenses, loss of pay, denial of professional standing, loss of reputation, loss of earnings and earning capacity, loss of the ordinary pleasures of, including but not limited to, the right to pursue gainful occupation of choice, legal fees, and etc.

134. As set out above, Defendants' actions demonstrated a malicious harm to Ms. English and a reckless disregard for the protected rights and well-being of her. Thus, Ms. English is entitled to punitive damages.

135. Ms. English is entitled to legal fees and costs of this action and previous charge with the Equal Employment Opportunity Commission, including attorneys' fees pursuant to A.R.S. § 12-341.01, 42 U.S.C. §1988, and 42 U.S.C. §2000e-5(k), 29 U.S.C. §216(b).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Jennifer English respectfully prays for judgement in her favor against Defendants and asks this Court to:

A. Declare that the acts, practices, and policies complained of herein are in violation of federal and/or state law;

B. Direct Defendants to place Ms. English in the position she would have occupied but for Defendants' unlawful actions, and make Ms. English whole for all earnings she would have received, including, but not limited to, back pay, overtime pay, interest, and other lost benefits.

C. Award Ms. English compensatory damages and punitive damages in an amount to be determined by the jury;

D. Award Ms. English pre- and post-judgment interest, the costs of this action, and reasonable attorneys' fees as provided by the statutes providing the causes of action cited herein; and

E. Grant Ms. English other legal and equitable relief, including equitable relief authorized by the cited statutes, as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Ms. English hereby demands a jury trial as provided by Rule 38 of the Federal Rules of Civil Procedure.

**RESPECTFULLY SUBMITTED**, this 18th day of August 2023.

*Ross Law, PLC*

By: /s/ Shane A. Ross

Shane A. Ross, Esq.
10810 N. Tatum Blvd. Ste. 102-827
Phoenix, AZ 85028
*Attorneys for Plaintiff*

*The Shaolian Law Firm P.C.*

By: /s/ Michael Shaolian

Michael Shaolian, Esq.
Pro Hac Vice Admission
800 W. 1st Street, Suite 401
Los Angeles, California 90012
*Attorneys for Plaintiff*